May it please the Court, Alina Schell, Assistant Federal Defender for the District of Nevada, on behalf of Appellant Kelly Nunes. At Volume 3 of the excerpt from the record. We didn't call the case, so let me get to the record. I apologize, Your Honor. I'm just so anxious to get started. This case is United States v. Nunes and Sutherland. Is that right? I'm representing Kelly Nunes, Your Honor. Thank you, counsel. And again, just for the record, Alina Schell with the Assistant Federal Defender for the District of Nevada. At Volume 3 of the excerpts of record at page 338, Lisa Parsons, who was a government witness, testified on redirect about her understanding of what the lender's policy was for stated income loans. The testimony is as follows. Question. Are parties to a transaction permitted to misrepresent a borrower's income on a stated income loan? Ms. Parsons' answer was, yes. We would overstate the borrower's income, being that we couldn't verify their income. So that's why it would go stated. So it would usually be stated over what the customer has made. This testimony, Your Honors, along with the testimony that I cited in my briefs from the bank's actual representative, Linda Laver, goes directly to the issue in this case. And the issue in this case is, was Mr. Nunes entitled to have the jury instructed on the meaning of materiality in a manner that was consistent with Nader and Godden? And the answer is, yes. The evidence in this case demonstrated that what was material to the banks was not whether the statements in that loan application were true or not. Indeed, we can't even contest that these were true statements. These were obviously false statements that were put in the loans. But the fact of the matter is the banks ultimately did not consider the veracity of those statements in determining whether to approve a loan or not. And that's why the instruction that should have been given should have defined materiality as any statement that either had a tendency to influence or was capable of influencing the decision-maker to which it was addressed. In this case, there is testimony from Linda Laver, and I cited that. It's in excerpts of the record. It's in Volume 2, around 113 and 114. It was that the policy was they were forbidden from verifying information that was submitted on loan applications. That's stark testimony which shows that the statements that the government says in its brief Senate argument were material in deciding whether to fund a loan, it shows that those statements just were not material. Do we judge materiality by the subjective views of the banker or by the objective views of what's required under the financial requirements of the national banking system? It's an objective test, Your Honor. So, for example, hypothetically, then, if the bank regulations that would be enforced by bank examiners would say that the practices you just described don't conform to national banking standards, what happens to your materiality argument? Were that the case, that would be problematic for my client. But at the time that these loans were approved, the stated income loan practices that were described by Linda Laver were approved. I'm just asking about the bankers, but I think at the time that probably ran afoul of the Federal banking regulations. If so, if so, is the case, is the, then, are the statements material or not? I would say no, Your Honor, and here's why. Because it doesn't look, what Nader and Godin tells this Court, is that you don't look generally like what the global banking community would consider. Certainly it's an objective test, but it's an objective test from the point of view of the decisionmaker the statement was made to. So let's assume the decisionmaker was engaged in fraudulent practices as well or negligent practices by not looking at the, trying to verify the veracity of the application. Still the same result? In this case, Your Honor, let me just say, this was a source of some confusion at the trial. A lot of what the government's arguments against our lines of inquiry was, was this is about loose lending, you're trying to argue banker negligence, et cetera. But that is not the issue here. This wasn't negligence. They were following their own policies and practices, and the policies and practices for stated income loans was to not verify the information that was submitted other than just sort of a very facial attempt to verify. You know, they talked a lot about we would just call and make sure that the person was employed, but they wouldn't get things that any, you know, what we might now consider reasonable, like pay stubs, salary, information like that. But they did verify the employment, didn't they? They did, Your Honor. And that there, didn't we have a material false statement? I'm sorry. Can you repeat the question? There didn't we have a material false statement about employment? It was a false statement, Your Honor, but I submit that it was not material because they did nothing to verify it beyond the voice just calling up Spearman Rino and saying, does this person work there? Were it a material statement to the bank, they would have gone farther. They, in all honesty, Your Honor, what the banks were concerned with at this time was making sure that the loan applications hit the numbers that they wanted to be able to fund the loans. And whether the statement was ultimately true or not was really not relevant to the decision-making process. I mean, basically what you're arguing is in materiality, you look to the subjective intent or practice of, in this particular case, the victim or the bank. And does that mean, just as a policy issue, that every one of these fraud cases from this point forward, whether it's mortgage fraud or any other fraud, if you approach materiality in that kind of way, then the victim is placed on trial. So then all of a sudden, these trials become incredibly focused upon what the practices are of the bank. And if that's the case, isn't that totally inconsistent with the way these courts, the way courts have approached lending negligence? Because they essentially say that that's not relevant. And aren't they the courts consistently saying, don't look to the practices of the bank, take this from an objective perspective? Your Honor, I agree that these sort of, I'm not asking for a global instruction that the general rule in all cases be that the instruction that I'm asking for was given, because I think that would be a dangerous standard to set. What I am saying is that on the facts of this case, the evidence in this case, the materiality of the statements that were addressed to mortgage it became relevant. I think that this is sort of, this is one of these situations where, based on the evidence in each given case, the court has the option to give this kind of instruction. And it was definitely merited here. But really what you're saying is if you have an incompetent, gullible or culpable victim, then your client, then the statement's not material. I'm not saying that, Your Honor. I'm saying that if the, if my client followed the policies and practices that were in place by the bank at the time that the applications were submitted, then certainly was this wise on anybody's part? No, it wasn't wise. But he followed the rules. The statements were not really relevant to their decision-making process, so they weren't material. Let me ask you a different question. You know, the language of the instruction, if I'm correct, came from our model criminal jury instructions. True? It was a slight variation, because there was an addition of the language from Blix about you don't have to prove that it actually influenced the decision. It is a variation, but what this Court said in Peterson is, and that was a plain error case, not here where this is a preserved error. What you said, what this Court said in Peterson was that it would be preferable to use the language in Godden. And I actually, I have to cede some time to my co-counsel. Thank you, Your Honor. Thank you. Well, I wonder whether we shouldn't just dispose of your case first and then take the next case separately. There's not that much overlap, I don't think. All right. Well, let's just proceed with yours, and then we'll take the second case. The government? Yes. May it please the Court. James Pierce for the United States. The district court properly followed the Supreme Court's guidance on materiality when it charged the jury using, as Judge Thomas indicated, the model jury instruction from, for the Ninth Circuit. That jury instruction basically tracks the language from originally Cungus and then Godden and then Nader, which talks about the natural tendency or capacity to influence. Where there is a difference is in the final part. The language from the Supreme Court talks about the decision of a decision-maker, whereas the model jury instruction on bank fraud provides a more specific direction, namely a financial institution to part with money or property. That's a more general instruction. Well, that's what – that's how Nunes characterizes it. But in fact, in the original – That's how I would characterize it. One is, what does it do to financial institutions in general? And the other is, what does it do to this specific financial institution? Well, respectfully, the Ninth Circuit instruction talks about a financial institution which earlier in the same bank fraud instruction has already identified the relevant institution. And then it talks about what the specific decision is. It's parting with money, giving out the mortgage loan. So to the extent there's a concern about whether one is broader or narrower than the other, our position is, in fact, that the Ninth Circuit pattern instruction is narrower, placing a heavier burden on the government. But frankly, I think that's not something to lose a lot of time on. The point is the language is – closely tracks the Supreme Court, and again, to a point that both Judge Thomas and Judge Sessions raised earlier, it's an objective standard and it properly captures the nature of the objective standard. This Court – Well, when we apply objective standards, are we talking about the transaction view from an objective point of view or what should have happened from an objective point of view? And the reason I say that is that let's just – I mean, what the government's argument is, it should have been material, and what the bank said, it wasn't material. So which – do we use what actually happened and view that from an objective point of view, or do we look objectively as to whether or not it should have been material? Well, I would actually disagree with the premise that the bank, in fact, mortgaged the value of the statement.  And the reason why I would say that is, assuming hypothetically, I still think we look at the objective nature of the statement. For many of the reasons Judge Sessions indicated in his question, as a policy matter, if we are going entirely subjective, we are perhaps putting on the victim in trial, extending the nature of the proof, but also, as we say in our brief, effectively immunizing the maker of the statement, the maker of the misrepresentation. And there's nothing in this Court's or the Supreme Court's case law that suggests that is the way that one undertakes the materiality assessment. We're looking at the nature of the statement itself and whether it has the intrinsic capacity to influence a decision. And to the sort of the question of, well, what about on this record, there were numerous misstatements. There were not only the, as Judge Reinhardt noted, the misstatement as to the Spearman and Reino and the amount of the income, but there was misstatements in Nancy Martinez's loan application suggesting she intended to use the residence as a primary residence, that she was actually the buyer and not a straw buyer, that she intended to pay the closing costs from her own savings and checkings account. In fact, of course, that money came from Jeannie Sutherland in a series of cashier's checks that then flowed and was used to pay those closing costs. And then even more globally, there were misrepresentations about the inflated nature of the purchase price. The parties had more or less valued the house, the Buffalo Drive property at a million dollars, but the actual sale price was 1.25 because there was room put in there for a kickback to flow to Jack Williams through Dolphin Bay Investments. But what do you make of the word the decision maker in the Nader decision from the Supreme Court? Why did they add that particular word, which, I mean, literally suggests that you look at the person who makes the decision to decide whether this representation is going to have any impact? I think, Judge Hutchins, you're right to indicate that there's some tension between all of the case law that's fairly clear, that this is an objective standard, and the fact that there is this notion that you are looking at the decision maker. I think the way to resolve that gets to the colloquy Judge Thomas had with my friend on the other side, which is you look essentially at what the reasonable decision maker would have made. And we cite in our brief, which the Supreme Court did in a footnote in Nader, that when you are concerned, and this is from the restatement second of torts, when you're considering the – whether a misstatement is material, you're considering that from the perspective of the reasonable person. Notably, with one gloss that is not, in our view, relevant in this case, but again, it gets to a question raised earlier, which is if the maker of the misstatement has reason to know that the recipient will regard a misstatement not as material, but that a – I'm sorry, would – if the maker of the representation sort of knows that the recipient is gullible or prejudice or whatnot, but that a reasonable person would not regard it as material, we are still, under that restatement, going to find it – find the person material and hold that person liable. And I think that's the proper way to view the materiality inquiry generally and certainly in this particular case. Kennedy. I'm not sure I understood your statement. Are you saying that if a reasonable decisionmaker would not have regarded the statement as material, that's the standard we should use? No, certainly not. And if I said that, then the – Then it sounds like you're trying to have it both ways. It's true that there's an aspect – You just argued that we should look at from the point of view of the reasonable decisionmaker when the actual decisionmaker viewed it as nonmaterial. And then you just argued the other way. So – What I'm noting, calling attention to, is a part of the restatement second of Torts that notices that where the decisionmaker is gullible, credulous, et cetera, it is still possible to find that that – that a statement is material. This Court need not get into that and reach that question. That's – that's something that is in the restatement of Torts, but in our view is not – doesn't apply to this particular case. Suppose there's a lending institution which says, you know, we've got lots of money and this housing market is, you know, so unpredictable. We're willing to make loans regardless of your income. But we get – collect all the information. And then the person relies on the income. Now, you'd say a reasonable lender would care about the income, but this one doesn't. Where would you come out on that case? Our view is that the statement – the misstatements would still be material, again, because the fact that that – under your hypothetical, Judge Reinhart, that that institution was – it was operating unreasonably, that the nature of the inquiry on the objective nature of the misrepresentations made by those seeking the – the loan would have the natural tendency or capacity to influence a reasonable lender, and therefore it should be considered material. So what evidence did you put on as to the reasonable lender? Well, there – there were two individuals that testified from mortgages. Neither of them – Lisa Parsons, by the way, who actually was with Atlas Mortgage, who was the same company that – that Kelly Nunez and Carson Wingett worked for. There was Patricia Forcier, who worked now at Deutsche Bank, but worked at Mortgage-It. And she actually said quite clearly in her testimony, if we knew that there were – if we know that there are misstatements as to employment and as to income, then that's a red flag for us. We will go and take – take a look at that, and quite likely not issue a loan. And then Lisa Lauver also spoke to the question of the – the need to receive this information. It's true, and the government's not shying away from the fact that the stated income loan, the liar loans, were probably not a good way to do business. But it's a mischaracterization of the record to suggest that Mortgage-It simply did not care about this information. Right. I mean, my point was it's been an interesting discussion about the reasonableness and the national standards. But in fact, there's no evidence of that at all in this trial except for the actual testimony of the bankers about their specific practices. True? That is correct. Yes. But you also had a whole series of other misrepresentations that you relied upon. For instance, just as an example, the representation that – that these buyers were going to be the primary residents of the – together with the identity of the buyers. Those are all representations upon which you theoretically argued that the bank relied. Did you not? That's correct. And as I – as I argued earlier, not only the fact of straw purchasers, but the misrepresentations as to intention to use it as primary residence. In the case of the Buffalo Drive, the statement that Nancy Martinez herself intended to – or would be paying the closing costs, which she did not. It came from me. But the misrepresentation of your assets or the income of the – of the buyers was only one part of your case. That's – that is – that's correct, Judge Sessions. I think we have 14 seconds to wind up. And I have nothing else to – well, one quick point on Peterson. That – Peterson actually handled a false statement instruction. It did not handle a materiality. And after this Court's decision in Peterson, the jury instructions were amended to more closely track the language from Gowden, Nader, and the Supreme Court. Thank you. Thank you. Your Honors, I would just note that when it comes to something like giving the Court instructions on each and every element of an offense, this isn't horseshoes. Close isn't good enough. I just want to start with first talking about what the other – Patricia Forcier's testimony. Are you doing the rebuttal now or the next case? I'm doing the rebuttal, Your Honor. My co-counsel over at the table is representing Ms. Sutherland. And this is about horseshoes and hand grenades? Horseshoes – this is neither of those situations, unfortunately. You started like you were just winding me up for a long speech. But it's just rebuttal. I treat everything like I've got at least half an hour to talk, Your Honor. But my point is, is that this is not a case where close enough is good enough. This is about a very essential element of an offense. And this is why the government can't meet its burden of proving that this is harmless error. Because, certainly, the evidence is not perfect in this case. There is the stuff that Your Honor pointed out about whether this was – there were misstatements about other areas, like is this going to be a primary resident who actually paid the down payment, things like that. But the fact of the matter is the evidence in this record gave some doubt as to whether the government had proved this most very essential element, that the misstatements were material. If the proper instruction had been given, it would have given the juries a substantive – the jury members a substantial hook or at least a substantial question in their mind that there's some doubt about whether the government had proved this element. And unless there are any further questions, I'm going to submit the case, Your Honors. Thank you. Thank you. If it pleases the Court, Melinda Weaver, appearing for Appellant Sutherland. I'd like to reserve two minutes for rebuttal, if I may. Could you move the microphone just a little closer? I'm sorry. I apologize, Your Honor. Do you need me to repeat my appearance? No. Ms. Sutherland was indicted at the heyday of a financial turmoil in the State of Nevada due in no small part to the housing crisis. When she was tried, she was tried with Kelly Nunez. Our argument is, is that this was an improper joinder of trial. The evidence against Kelly Nunez was overwhelming. And while we realize that that is not alone enough to sever a trial, the fact remains that the record shows that Kelly Nunez not only had a history of performing fraudulent transactions. He was the one that actually falsified the bank statements, met with Ms. Martinez when verifying the loan. We had evidence presented by Carson Wingett that Mr. Nunez had previously asked persons at gentleman clubs to verify the employment of people that did not work there. Ms. Sutherland, on the other hand, had not met Mr. Nunez. She had not interacted with him at any point, and she had no control over the loan documents that were submitted to Mortage Act. Now, in Zafro, the court, the United States Supreme Court recognized that there is no bright-line test for severance, that it's a factual situation based on the amount of evidence presented against another person and whether or not that evidence can have a detrimental effect on their co-defendant. In this case, Ms. Sutherland was alleged to have provided the down payment. And I would like to clarify the government's assertion that Ms. Sutherland paid the closing cost. This seems to be conflated on numerous occasions, whether or not she paid the closing cost or the down payment. Our argument is she paid neither. She gave some money to a co-worker, Jack Williams. But regardless, even should this money be considered to be payment on the down payment cost. And again, Ms. Sutherland also did not have any control over the loan documents. She made no representations that this money paid was earnest money coming from Ms. Martinez. Kennedy, did your client, Ms. Sutherland, get a longer sentence at the end of Mr. Nunez? No. She got a slightly shorter sentence.  Yes, that's correct, Your Honor. And this confusion is particularly important in the light of the argument that we made regarding the unanimity instruction. Ms. Sutherland was tried for. How are you prejudiced by this? I mean, I've seen many a trial in which the defendant who was not the focus of the main thrust of the government's case stand up and say, look, it's all the other person. I'm just a small player. And to what extent can you actually show that you're prejudiced by being in the same trial with someone who's much more actively engaged? Well, number one was the prior bad acts that were introduced against Mr. Nunez. There was the testimony that he had had a reputation for falsifying these bank statements and that he was regularly engaged in this kind of behavior. Ms. Sutherland, there was no evidence to show that. She had no criminal record and nobody had suggested that she had performed any kind of behavior like this in the past. Having this information brought forward while alleging that she was in a criminal conspiracy with Mr. Nunez prejudiced her in the sense that it's very difficult for the jury to compartmentalize this evidence. When you show that this is regularly being done, especially in the economic climate that existed in Nevada at the time, people were looking for someone to blame for what was happening. And bringing in a career criminal, bringing in a career mortgage fraud expert, if you will, and trying them alongside Ms. Sutherland, irreparably prejudiced her. And this goes along with the ---- Not only has to be prejudiced, but manifestly prejudicial. And I agree. I'm not sure what the difference is, but it sounds like it has to be more. And I would agree that the weight of evidence against Mr. Nunez resulted in manifest prejudice against Ms. Sutherland. And this prejudice was compounded by the fact that there was no specific unanimity instruction given at the time of trial. Ms. Sutherland was tried for both bank fraud on two properties, which we've heard about before, and a conspiracy, which was charged in one count. Now, given the evidence produced against Mr. Nunez, I realize that both were acquitted of the Norris Avenue transaction. There needs to be more distinction for the jury in order of what behavior was actually culpable. Again, Mr. Nunez ---- The jury, in fact, was able to compartmentalize. I would argue that the verdict is not consistent with the paucity of evidence against Ms. Sutherland. In the Norris Avenue transaction, there was an equal amount of evidence adduced against Mr. Nunez that there had been falsified documents. However, there is very little evidence adduced against Ms. Sutherland. As such, the verdict tends to show that the jury was trying to let them go on one point, but didn't know exactly how to do it. As far as the conspiracy charge, the conspiracy charge alleged both of these properties in one. And the confusion is presented when you see that the district court on sentencing actually rendered judgment for that Ms. Sutherland had to pay restitution on both the Norris Avenue and the Buffalo Drive property, even though she had been acquitted of the bank fraud charge as to the Norris Avenue property. There's no consistency of verdict is the basic line here. We have a defendant who is charged with providing restitution on both Norris Avenue and the Buffalo Drive transaction. We have evidence that Mr. Nunez, provided by the same people, Carson Wingett was the one that came forward and said this is what happened on Norris, this is what happened on Buffalo, and yet we have this inconsistent verdict. And so I would argue that the failure to or the lack of judgment against Ms. Sutherland on one of these counts doesn't tend to show that they the jury was able to compartmentalize the evidence, but that they were trying to split the difference and maybe. But to what extent are there different standards when you're taking the Norris property? You're talking about relevant conduct. Relevant conduct is by preponderance of the evidence, not beyond a reasonable doubt. So they are to some extent not inconsistent, isn't that? Well, the Norris Avenue was charged as a separate bank fraud count. And she was acquitted. She was acquitted of that. Her standard was beyond a reasonable doubt. But when in sentencing, she's actually assessed that amount to pay in restitution, that's a preponderance of evidence standard. And that would go to the discretion of the sentencing judge. And what we're actually talking about is reliability of the verdict, whether or not she actually engaged in any culpable behavior for the conspiracy and whether there was a unanimity in the decision of the jury. Were they convicting her of conspiracy for the Norris Avenue transaction? Were they convicting her of conspiracy for the Buffalo Drive transaction? We can't tell from the facts. We had two very separate transactions that were charged in one count. And there was no specific unanimity instruction given at the time of trial. And that would also – where my argument does tend to overlap with Ms. Schell's and Mr. Nunez's is the admission of the mortgage at civil lawsuit and the admission of the testimony of defense's proposed expert, Thomas Tarter. I know the court's already discussed the issue of materiality insofar as I would characterize it as the difference between materiality and the reliance of the bank on the information provided. And where I believe that Ms. Sutherland differs in this point is that she is not alleged to have actually put forward the information that went forward to the bank. She was alleged to have paid a down payment. Now, I realize that there's a conspiracy charge alleged here. But again, that goes back to our specific unanimity instruction. Can we be sure that the jury actually found her guilty of what happened in the Buffalo Avenue transaction based upon a conspiracy theory when we didn't have a specific unanimity instruction on the conspiracy charge? As such, we cannot be sure that she was found either directly responsible for the bank fraud charge on the Buffalo Avenue property or whether she was found as a co-conspirator and thus impute the behavior of Mr. Nunez. As such, the relevancy of some of these materiality issues goes to whether or not her specific act when or alleged act was material to the banks. And that would be whether payment of the down payment, whether payment of the earnest money was something that was taken into consideration when the bank made the decision. Kennedy, below your two minutes, do you want to save your rest for rebuttal? I'll save the rest. Thank you. Thank you. James Spears, still for the government. The district court did not abuse its discretion in denying Sutherland's motion to sever and excluding the evidence, and it did not commit plain error when it gave a general but not specific unanimity instruction. The Zafiro case in the Supreme Court makes clear that the general default is for defendants to be tried together. This court's case law suggests that is even more so the case when defendants are charged in a conspiracy, as they were here. And Zafiro similarly makes clear that instructions that direct a jury to cure any prejudice manifest or otherwise. All of those elements were in place in this case. And then, of course, and this is a fact that is relevant for both the severance issue and the question of unanimity, the jury's rendering of different verdicts as to when considering all three of the defendants, it acquitted one defendant entirely of count three and then acquitted both, well, in relevant part, acquitted Sutherland of one and Sutherland of two. Found her guilty of both conspiracy and of count three, which suggests an ability to compartmentalize the evidence in our view. That's not an abuse of discretion on the district court to have had them tried together. Moving to the unanimity, again, it's important to remember this is a plain error and the district court's giving of the general verdict, excuse me, of the general unanimity instruction is consistent with this Court's guidance that a general unanimity instruction is typically all that is required. The types of situations where a general unit, where a more specific unanimity instruction are things like when there is factual complications at trial or where the indictment is broad or ambiguous, where the jury has shown some confusion, and none of that happened here. The indictment charged one conspiracy and then in two separate counts charged the two properties. And again, to repeat the earlier argument, the fact that the jury convicted as to one and acquitted as to another showed that they understood that they were compartmentalizing the evidence and they understood that they need not consider evidence, that the general unanimity was, instruction, excuse me, was sufficient. Turning to Ms. Sutherland's arguments as to the excluded evidence, again, our position is the district court did not abuse its discretion as to either the civil complaint or to the admission of the testimony of Thomas Tarter, the financial, the expert on finance and mortgage lending. With respect to the civil complaint, that complaint alleged that mortgage-ed did not comply with quality control standards that the Department of Housing and Urban Development put in place for FHA-backed loans, a different type of loan. And similarly, it's a complaint. It's a civil complaint, which, of course, wouldn't be evidence in its own case and arguably shouldn't be considered evidence here on abuse of discretion standard that the district court was well within its discretion to exclude it. As to Thomas Tarter, the financial expert, the district court held a Daubert hearing, carefully considered what the parties had said, and concluded that Tarter had no expertise with respect to mortgage-ed, did not know about mortgage-ed's practices, would not be able to offer the jury any insight on mortgage-ed. And then the district court also held that it might mislead or confuse the jury to admit this evidence. On appeal, Ms. Sutherland takes issue with the relevance determinations that the district court made, again, relevance determinations we think were proper, but actually does not even oppose or raise an argument on the 403 grounds. We think, therefore, she's weighed the challenge to the 403 grounds, but would not be able to succeed on one in any case. Unless the panel has questions on any of Ms. Sutherland's other arguments in her briefs, I'm happy to yield the rest of my time. Thank you, Your Honor. Thank you. I just want to address a couple points briefly. As far as the inflated income or the inflated price of the property that Ms. Sutherland is alleged to have committed on the Buffalo Avenue transaction, as stated in the briefs, Ms. Sutherland had a duty to report under her real estate license any properties that had come in, any offers that had come on the property as a seller's agent. She had no control over inflating the sales property, and so we would argue that that was a misnomer. As to the decision of the Court on the admissibility of Thomas Tartar's testimony as well as the mortgage debt lawsuit, I will note that the Court stated when making this decision in Excerpt of Record 424 that the Court stated the mortgage debt evidence was not relevant because falsely inflating an applicant's monthly income by $25,000 generally has a natural tendency or is capable of influencing a mortgage lender's decision to extend a loan. In essence, the Court was taking this decision out of the hands of the jury about whether or not these statements were material, and by doing so was stating that the jury was not allowed to be presented evidence that may have a material impact on Ms. Sutherland's case. And this is particularly important in light of the fact that we cannot be sure that the jury found Ms. Sutherland guilty on a conspiracy charge or a direct theory of committing the bank fraud, thereby stating whether or not the materiality was the providing of the earnest money or whether or not the conduct of Mr. Nunez was imputed to Ms. Sutherland. Unless the Court has any questions, I'll submit. Thank you, counsel. Thank you. Both cases, as argued, will be submitted. The Court will stand in recess for the day.
judges: Sessions, Reinhardt, Thomas